SIGMUND ZEGLEN, Respondent, *v.* ARTHUR P. ADAMSON et al., Appellants.

EDWARD ZEGLEN, Respondent, *v.* ARTHUR P. ADAMSON et al., Appellants.

WALTER ZEGLEN, Respondent, *v.* ARTHUR P. ADAMSON et al., Appellants.

Third Department, December 2, 1960.

*Carter & Conboy* (*James Conboy* of counsel), for John Minkiewicz, appellant.

*Oliver, Scully & Delancy* (*John J. Scully* of counsel), for Arthur P. Adamson and another, appellants.

*E. Stewart Jones* and *Stephen Vinciguerra* for Sigmund Zeglen, respondent.

*Kouray & Kouray* (*Christian X. Kouray* of counsel), for Edward Zeglen and another, respondents.

*Per Curiam.* Plaintiffs Zeglen were injured in an automobile accident in Schenectady, March 24, 1957 while passengers in a car owned by defendant Minkiewicz, which was in collision with a car operated by defendant Adamson. Defendant General Electric Company was the employer of Adamson and it has been found he was at the time of the accident operating his car in the business of General Electric.

Sigmund Zeglen sued both car owners and General Electric; Edward Zeglen and Walter Zeglen sued the car owners but not General Electric. Verdicts were returned for the plaintiffs in each case against each defendant sued. Sigmund Zeglan had a verdict of $70,000; Edward Zeglen and Walter Zeglen each had a verdict of $4,500, which the Trial Term set aside as excessive unless a stipulation of reduction to $3,500 was made in each case.

The stipulation was made. The $70,000 verdict was not set aside by the Trial Term and was allowed to stand. All defendants appeal from the resulting judgments.

Minkiewicz was driving east in Curry Road and was turning right on a " Y " shaped curved approach to Hamburg Street, while Adamson, who had been driving in Hamburg Street, was turning into the same approach into Curry Road in the opposite direction. The cars came together on this curved roadway.

It is argued by appellants Adamson and General Electric that the verdict based on the negligence of both drivers is inconsistent; that the jury had to take one or the other driver's version of the accident. There are cases where it may not be possible to find both drivers negligent; as, for example, where the accident must have occurred on one side or the other of the road. This was one element, but not the only one, of the inconsistency considered in *Cubert* v. *Spencer* (9 A D 2d 28) cited by these appellants.

Here, however, the photographs show both cars were damaged on the left side in almost equal proportions, and there is proof from which the jury could have found that in the curved approach both Minkiewicz and Adamson were too far to their respective left and that this and other negligent factors caused the accident.

We agree with the court at Trial Term that the verdict is not against the weight of evidence. The finding of absence of contributory negligence also is not against the weight of evidence on this record. The testimony on cross-examination by a police officer called by defendant Adamson that he had received a telephone call from an " adjuster for the insurance company " about coming to court, is neither so clearly attributed to plaintiffs' counsel as to be a calculated stratagem, nor in the light of universal insurance coverage, shown to be so prejudicial to any defendant as to require a new trial.

The main problem as the case reaches us on appeal is whether Sigmund Zeglen's verdict of $70,000 is excessive. This, in turn, depends in our judgment on whether the jury had before it sufficient evidence of permanent brain damage to warrant so large a verdict. Without such evidence the verdict is plainly excessive.

Two electroencephalograms were made of this plaintiff by qualified neurologists. These were examined by a neurologist of high standing who testified that in his opinion plaintiff had " permanent brain damage ". This is not medically disputed in the record. No physician called by defendants disputed the opinion.

Plaintiff was examined by a physician on behalf of defendant Minkiewicz. This physician was attending a convention at the time of trial and his opinion, as expressed in a written report, was stipulated in the record. As far as this report reveals, this physician did not take an electroencephalogram of plaintiff and did not examine those on which plaintiff's medical proof in this respect was based.

Although the report states that this plaintiff " has certainly made an excellent recovery from the serious accident in which he was involved " there is no specific opinion expressed that he had no permanent brain injury. Thus, the defendants did not, on this record, controvert the plaintiff's medical opinion of permanent brain damage; and no reason is shown why, if the encephalogram did not show such damage, it could not have been disputed or further tests made to meet this issue, as the trial progressed.

No application for any such relief was made. Defendants seemed content to rest on a written medical report from a doctor who was not available at the trial. It is argued, also, that the neurologist who had testified to permanent injury qualified his opinion. A full reading of his testimony makes it perfectly clear that when he understood the question clearly his answer was unqualified; and it was repeated.

The judgments should be affirmed, with costs.

BERGAN, P. J., COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgments affirmed, with costs.